THE STANDARD SEWING MACHINE COMPANY *vs.* GEORGE E. SMITH.

New Castle County, November Term, 1894.

**Bills and Notes. Protest.**—Notice of protest must be given within the next day after dishonor or notice thereof; it may be verbal or in writing, and it should be given by the holder.

**Same.**—It is no part of the official duty of a notary public, as such, to give notice of protest, although he frequently does give such notice and may do so as the agent of the holder.

**Bills and Notes. Indorsement.**—Where there are several indorsers, each indorser has the same time after the receipt of notice of dishonor to transmit the same to the next indorser in order, or to the person whom he wishes to hold.

This was an action of assumpsit upon a promissory note as follows :

"SEAFORD, DEL., January 10, 1894.

"Thirty days after date I promise to pay to the order of George E. Smith, at the First National Bank at Seaford, the sum of ninety-five dollars, without defalcation for value received.

"SAMUEL I. ROOP."

This note was indorsed as follows :

(1.) " G. E. Smith,

(2.) " Pay to the order of Union National Bank. The Standard Sewing Machine Company. By T. D. Brown, Attorney.

(3.) " For collection and credit of Union National Bank of Wilmington, Del. J. H. Danby, Cashier.

(4.) " For collection and credit to Sussex National Bank, Seaford, Del. H. M. Wright, Cashier."

The suit was by the plaintiff company, the holder and second indorser of the note against Smith, the defendant, who is the payee and first indorser. The sum claimed was $101.83, being the face

of the note, $95.00, costs of protest, $2.11, and interest from February 12, 1894, to date, $4.72.

The evidence of the plaintiff was to the effect that on the 12th day of February, 1894, the day of maturity, the note was presented at Seaford, Delaware, by the Sussex National Bank to the First National Bank at Seaford, the place of payment named in the note, that payment was there demanded and refused, and on the same day the note was duly protested by Nathaniel H. Brown, a Notary Public. On the next day, February 13th, the note and copy of protest were sent by mail, by the Sussex National Bank, the then holder and fourth endorser, to the Union National Bank of Wilmington, Delaware, the third endorser. On the next day, February 14, the note and protest were sent by mail by the Union National Bank to the Standard Sewing Machine Company, the second endorser, at Philadelphia. On the next day, February 15th, the Standard Sewing Machine Company sent a letter or notice to Samuel I. Roop, the maker, at Laurel, Delaware, which reads as follows:

" PHILADELPHIA, PA., February 15, 1894.

" Mr. S. I. Roop,

      " Laurel, Del.

" DEAR SIR:—

    " You note to the order of George E. Smith, and by him endorsed, for ninety-five dollars, due February 9-12, has been returned to us protested; protest fees and costs, $2.11. Total, $97.11. Please write us at once what you propose doing with the note.

        " Yours truly,

           " THE STANDARD SEWING MACHINE CO.

                    T. D. B."

This letter was received by Roop on February 16, 1894, he then and there acting as agent for the plaintiff Company. On the same day he called upon and left the letter with the defendant, George E. Smith, and asked him to help him about the note. Smith took the letter for the purpose of answering it as it is alleged,

Argument.

and kept it in his possession and produced it at the hearing of this cause.

It is also claimed that Roop told Smith on February 16th that the note was protested, and that at Smith's instance he went over to Seaford to see what had become of the note and reported to Smith that it had been protested.

*Churchman*, for the defendant, moved for a non-suit. The narr alleges no notice of protest to the defendant. (1) No notice of protest as required by law was served; 1 Pars. Notes & Bills 466, 476; (2) that the so-called notice if given at all was too late; 1 Pars. Notes & Bills 506; Selwyn, Nisi Prius 356; *Tyndale vs. Brown*, 1 Term 167.

*Ward*, for the plaintiff, contended that the form of the notice was sufficient; Randolph, Commercial Paper, § 1222. It need not be in writing; *Brindly vs. Barr*, 3 Harring. 419; but an oral notice is sufficient; 1 Pars. Notes & Bills 477; 3 Randolph, Commercial Paper, § 1219. Notice of dishonor may be given by the agent to the holder; *id.* § 1236; *Woodthorp vs. Laws*, 2 M. & W. 109.

The motion for a non-suit was denied.

The proof on the part of the defendant was that in the conversation and dealings between Roop and Smith, respecting the note after protest, Smith dealt with Roop not as the agent of the defendant company, but as an individual and with reference to helping Roop pay the note as an accommodation to him, and that they had no reference whatever to Smith's liability to the plaintiff as an indorser.

No question was raised as to the validity of the note or as to the amount due thereon; but the defendant insisted that he is not liable to pay the same because, being an indorser, due notice of the dishonor of the note was not given to him. That no formal notice

was given at all, and that even if a formal notice was given it was. not in time and therefore unavailing.

*Ward*, for the plaintiff, asked the Court to instruct the jury,. (1) that no specific form of words is necessary but only that the words used convey the idea that default in payment has been made; (2) the notice need not be in writing, and where it is verbally given. need not be in the terms of an ordinary written notice; (3) notice may be given by the agent to the holder; (4) it is no part of the official duty of the notary to give notice; 1 Pars. Notes and Bills 506; 3 Randolph, Commercial Paper, § 1233. In this case the notice was not too late, the note having been protested on the 12th and notice given to the defendant on the 16th; 1 Pars. Notes & Bills 506; 2 *id.* 513-14; 3 Randolph, Commercial Paper §§ 1260, 1261.

*Churchman*, for the defendant, prayed for instructions as follows: (1) That the letter to Roop was not a notice; (2) that the notice ought to have been given to T. D. Brown, the attorney who lived in the town, and could have been notified on the same day and not sent to the Standard Machine Co.; (3) if the proof shows that no particular notice was given to the defendant he is. not liable.

·LORE, C. J., (charging the jury.)

The maker of a plain, promissory note for the payment of money, like the one sued upon in this case, is bound unconditionally. The endorser on the other hand, is bound conditionally. His undertaking is, to pay, if the maker on proper demand fails to meet the note at maturity, provided he, the endorser, has due notice of such failure to pay or dishonor. The holder of the note has the right to sue either the maker or the endorser, or both, as he may elect.

The question for you to decide is, Did Smith the defendant. have due notice of the dishonor of this note?

While it is always best to give a full and formal notice of such dishonor, it is nevertheless true, that no exact form or phraseology, and no particular words are necessary to constitute a good notice of dishonor. 1 Parsons, Notes & Bills 466; 3 Randolph, Commercial Paper § 1223.

The notice may be either verbal or in writing. *Brindley vs. Barr;* 3 Harring. 419.

All that is necessary is that the notice, whether verbal or in writing, shall convey to the endorser, full information that the particular note has been dishonored; this information may arise from the express terms of the notice or from necessary implication. Norton, Bills & Notes 281.

Notice should be given by the holder of the note or by his agent. It is no part of the official duty of a Notary Public, as such, to give notice of protest; although he frequently does give such notice and may do so as the agent of the holder. 1 Parsons, Notes & Bills 506; 3 Randolph, Commercial Paper § 1233.

The holder may give notice of the dishonor in the first instance to all parties on the note liable to him, or he may give notice to the one next to him in order, or to any one or more he wishes to hold, and take the risk of notice being given by each one to the other in the order of liability, and all parties duly notified in either way are liable. As he can only hold such as get notice, either from himself or others on the note in order, it is usual and best for him to notify all the parties in the first instance and thus save trouble.

It is now settled law that notice of dishonor should be given on the day next after the protest or the day next after receiving notice of dishonor by any party.

Where there are several endorsers each endorser has the same time after he receives the notice within which to transmit it to the next party or the party to whom he wishes to look that the holder has in the first instance.

If therefore a party receives notice from a subsequent party

one day he is not bound to transmit it to a prior endorser until the next day; 1 Parsons, Notes & Bills 513.

If therefore the note sued upon in this case was presented for payment and dishonored February 12, 1894; if notice of such dishonor was sent by the Sussex National Bank, the fourth endorser and holder, to the Union National Bank, the third endorser, on February 13th, the next day, and like notice sent by the Union National Bank, the third endorser, to the Standard Sewing Machine Company, the second endorser, on February 14th, the next day, and received by the said company on the 15th, and notice was sent to Roop, the maker, as agent for the plaintiff on the 15th and received by him on the 16th, and by him as such agent exhibited that day to Smith, the first endorser and defendant in such case, notice being in each case within the time allowed by law, viz., within the next day after notice was received, they were all in due time, and such notice would hold each party on the note liable to the Standard Sewing Machine Company, just as if the notice had been given by the holder itself to all the parties on the day after the protest; 1 Parsons, Notes & Bills 513–14.

Therefore, if you believe from the evidence in this cause that Smith, the defendant, on the 16th day of February, 1894, was notified either verbally or in writing or both together by Roop acting as the agent of the Standard Sewing Machine Company, so that he (Smith) understood the note in question had been presented and dishonored at the First National Bank at Seaford on February 12, 1894, the place at which the note was payable, and that notice of such dishonor had been transmitted from the Sussex National Bank to the Union National Bank on the 13th of February, from the Union National Bank to the Standard Sewing Machine Company on the 14th day of February and by it to Roop on the 15th day of February, then we say to you that such notice of dishonor was sufficient and in due time, and your verdict should be for the plaintiff for $101.83, the amount claimed; there being no dispute as to the amount. If you believe otherwise, however, your verdict should be for the defendant.

In determining this question, your decision must be governed by the evidence in this case as you heard it from this stand, and not from any statements that may have been made respecting it in this charge.

*Verdict for the plaintiff for $101.83.*